STATE, EX REL. THOMAS J. O'REARDON, v. C. FRANKLIN WILSON, JUDGE, ETC.

Decided November 30, 1926.

Prosecutors of the Pleas—Constitutional Office, but Powers and Duties are Prescribed by the Legislature—Under Act of 1911, as Amended in 1922, the Attorney-General Shall Attend Personally or by an Assistant, Whenever a Justice of the Supreme Court Shall so Request For Prosecuting the Criminal Business of the State in the County Designated—Upon Such a Request the Attorney-General Attended, Through an Assistant, at Morris County—Held, That the Prosecutor of That County During That Time was, in Effect, Suspended From the Performance of His Functions, and Could Not Approve Bills For the Employment of Assistants —Held, Further, That if This Were Not so a Mandamus Would Not Lie to Compel the Approval of Such Bills by the County Judge—He Could Only be Directed to Determine the Justice and Fairness of the Bills.

On return to alternative *mandamus*.

Before GUMMERE, CHIEF JUSTICE, and Justices TRENCHARD and MINTURN.

For the relator, *Elmer W. Romine*.

For the respondent, *Charles A. Rathbun*.

PER CURIAM.

The relator, O'Reardon, was employed by Mr. Bolitho, who then held the office of prosecutor of the pleas of Morris county to perform certain duties connected with the investigation of alleged violations of the criminal law occurring in that county. These duties were performed by him during the months of March, April and May, 1925, and he presented bills to Mr. Bolitho for payment for such services and for expenses incurred in their rendition. Mr. Bolitho approved the bills, and they were then submitted to Judge Wilson, of

the Court of Quarter Sessions, the present respondent, for his approval, pursuant to the requirement of section 95 of our Criminal Procedure act. *Comp. Stat., p.* 1850.

The latter refused either to approve or disapprove the bills, and the relator then applied to this court for a *mandamus* to compel Judge Wilson to certify the bills for payment. An alternative writ was thereupon allowed, and Judge Wilson in his return thereto has set up, among other matters, that the employment of the relator by Bolitho during the period in which the alleged services were rendered was without legal warrant, and bases this assertion upon the following facts: Mr. Justice Parker, of the Supreme Court, presiding in the several courts of Morris county, on February 19th, 1925, submitted a request in writing to the attorney-general of the state to attend personally, or by such assistant as he might select, in the county of Morris, *"for the purpose of prosecuting the criminal business of the state therein,* including the investigation of alleged crimes and misdemeanors, attending before the criminal courts and grand juries of said county, preparing indictments for crimes and misdemeanors in such county and trying the same." Pursuant to this request, the attorney-general designated Mr. Wilfred H. Jayne, Jr., as his assistant, "to perform and carry out the duties mentioned and set forth in said request, in the county of Morris." This designation was made on the 19th of February, 1925, and, under the authority conferred by it, Mr. Jayne went to Morris county on the next day and took charge of the criminal business of that county. Notwithstanding this designation of Mr. Jayne and his action thereunder, Mr. Bolitho assumed to continue to act as prosecutor of the pleas to some extent, and apparently without objection on Mr. Jayne's part.

In our opinion, the determination of the matter before us depends upon whether or not the legal effect of the action of the attorney-general was to suspend Mr. Bolitho for the time being from the further performance of the duties attached to the office of prosecutor of the pleas of Morris county. For, if that was its effect, Mr. Bolitho could not, by refusing so to regard it and assuming to perform to some extent the

duties connected with the office, impose upon the county any liability to pay expenses incurred by him in the unauthorized performance of those duties.

It seems clear from a reading of the provisions of the designation by the attorney-general of Mr. Jayne as his assistant, coupled with the terms of Mr. Justice Parker's request, that the effect of that designation was to suspend Mr. Bolitho from taking any part in the prosecution of the criminal business of the county during the period of Mr. Jayne's service there as assistant to the attorney-general. This being so, the vital question underlying the determination of the case is whether this power of suspension resided in the attorney-general.

The constitution of 1844 recognizes the existence of the office of prosecutor of the pleas, and provides for the filling of that office and the term thereof. It does not, however, specify any of the duties or powers of the incumbent. Shortly after the adoption of the constitution, and in April, 1846, the legislature passed an act providing that there should be appointed for each county some fit person, who should be an attorney and counselor-at-law, and whose duty it should be to prosecute the pleas of the state in such county in the absence of the attorney-general, and to do and perform such acts and things in behalf of the state in and about such prosecutions as the attorney-general might or ought to do if personally present. *Nix. Dig.* 49. In 1854 (*Pamph. L., p.* 131) the powers and duties of prosecutors of the pleas were enlarged by legislative enactment. This statute provides that after its passage "the criminal business of the state shall be prosecuted exclusively by the prosecutors of the pleas, except in counties where for the time being there may be no prosecutor or where the prosecutor desires the aid of the attorney-general." No change was made in the law in this regard until 1911, when the legislature made it the duty of the attorney-general, whenever a justice of the Supreme Court should so request, "to attend personally, or by his assistant, in any county of the state, *for prosecuting the criminal business of the state therein,* including the investigation of alleged

crimes and misdemeanors, the attendance before the criminal courts and grand juries of the county, the preparation of indictments and the trial of indictments for crimes and misdemeanors." *Pamph. L.* 1911, *p.* 325. This statute was amended in January, 1922 (*Pamph. L., p.* 11), so as to authorize the attorney-general to designate such assistant as he might see fit to act for him in the performance of the duties above recited. It is apparent from a reading of these statutory provisions that, in superseding Mr. Bolitho in the performance of the duties and the exercising of the powers of the office of prosecutor of the pleas of Morris county, the attorney-general was quite within the scope of the authority conferred upon him by the legislature; and our consideration of the matter has led us to the conclusion that the constitution, by necessary implication, has left the determination of the question of the scope of the powers and the duties attached to the office of prosecutor of the pleas entirely to the legislative body, together with the right to determine whether, under unusual conditions, those powers and duties shall temporarily be exercised and performed by the attorney-general, either personally or by his designated assistant, instead of by the holder of the office.

It follows, as the result of the views which we have expressed, that the action of the attorney-general in superseding Mr. Bolitho was taken under legislative sanction; that during the period of his suspension Mr. Bolitho was without authority to act in the performance of the duties or the exercise of the powers of his office, either personally or through assistants designated by him; and that, therefore, the application for a peremptory writ must be denied.

It may be well to add that, even if we had reached a different conclusion as to the authority of Mr. Bolitho to employ the relator during the period covered by the latter's service, we should not have felt justified in issuing a peremptory *mandamus* directing the respondent to approve the bills for the relator's alleged services and expenses. The purpose of section 95 of the Criminal Procedure act, above referred to, is to protect the county against unwarranted expenditures

made by the prosecutor of the pleas by requiring the judge of the Court of Quarter Sessions to ascertain and determine whether a given claim, when presented to him for his approval, is a just and valid one. In the present case, as has already been pointed out, the respondent refused to consider the relator's claim upon the single ground that the prosecutor of the pleas had no power to incur the obligation represented by it. In this situation, the limit of the power of the Supreme Court would be to direct the respondent to take up the consideration of the relator's claim and determine whether it was fair and just; and, if he so found, then to approve it for payment.

Peremptory writ refused.